IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY JONES, | ) | CASE NO. 5:10 CV 2621 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Tammy Jones under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application[2] for disability insurance benefits.[3]    After the Commissioner filed an answer[4] and the

---

[1] ECF # 13.  The parties have consented to my exercise of jurisdiction.

[2] Jones originally filed an application for disability insurance benefits in 2002 that was denied but was then remanded after judicial review.  *See*, ECF # 20 at 1-2 (citations omitted). Jones filed the present application while her first claim was pending in the district court, and the two applications were consolidated upon the remand of the original claim. *Id.* at 2 n.1 (citations omitted).

[3] ECF # 1.

[4] ECF # 9.

administrative record,[5] the parties briefed their positions[6] and participated in a telephonic oral argument.[7]

For the reasons that follow, I will find that the Commissioner's decision is supported by substantial evidence and is, therefore, affirmed.

## Facts

### A.   The findings and decision of the Administrative Law Judge

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, observed that Jones was 47 years old at the time of the supplemental hearing in 2007 and had a GED.[8]  The record indicates that she previously worked, among other jobs, as a waitress, chicken sorter, and cashier.[9]

The ALJ found that Jones had severe impairments consisting of affective disorder, obstructive sleep apnea, narcolepsy, and obesity.[10]  He determined that Jones did not have an impairment or combination of impairments that met or equaled a listing in Appendix 1

---

[5] ECF # 10.

[6] ECF # 11 (Jones's fact sheet); ECF # 17 (Commissioner's brief with chart); ECF # 20 (Jones's brief).

[7] ECF # 22.

[8] Transcript ("Tr.") at 459.

[9] *Id*. at 739.

[10] *Id*. at 442.

to the regulations.[11]  The ALJ then made the following finding regarding Jones's residual

functional capacity:

> During the period at issue, and with the exception of possible brief periods of less than 12 continuous months, Jones retained the residual functional capacity to perform all the basic work activities described in 20 CFR 404.1521 and 404.1545 within the following parameters:  she was able to lift, carry, push or pull 10 pounds frequently and 20 pounds occasionally; she was able to sit with normal breaks for about six hours in an eight-hour period; and she was able to stand and/or walk with normal breaks for about six hours in an eight-hour period.  Jones was also limited to simple jobs where she would not have to engage in any rhythmic actions, and to jobs that were low stress (i.e., jobs in which Jones would not have to engage in arbitration, confrontation or negotiation; or jobs in which Jones would have to be responsible for the safety and welfare of others).  Jones was also limited to working in environments where she would have minimal contact with the public, co-workers or supervisors.  However, Jones could not work in isolation from others.  Jones was also limited to working in environments where she would not have to work on unprotected heights, or on ladders, ropes or scaffolds, or around dangerous moving machinery or other hazards.  Jones also could not work in environments where she would be exposed to temperature extremes, or concentrated amounts of fumes, odors, dusts, gases, poor ventilation, etc.[12]

The ALJ decided that this residual functional capacity precluded Jones from

performing her past relevant work.[13]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the residual functional capacity finding quoted above, the ALJ

_____

[11] *Id.* at 445.

[12] *Id.* at 445-46.

[13] *Id.* at 459.

determined that a significant number of jobs existed locally and nationally that Jones could perform.[14]  The ALJ, therefore, found Jones not under a disability.[15]

**B.    Issues on judicial review**

Jones asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Jones raise the following two issues:

> 1.    Whether substantial evidence supports the ALJ's determination that Ms. Jones can perform the standing and walking required by light work.
>
> 2.    Whether the ALJ properly analyzed [Jones's] sleep apnea and narcolepsy at step three of the sequential evaluation process.[16]

# Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

---

[14] *Id.*

[15] *Id.* at 460.

[16] ECF # 20 at 1.

-4-

> Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[18]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating source articulation/good reason*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such

---

[20] 20 C.F.R. § 404.1527(d)(2).

[21] *Id.*

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

-6-

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[29]  The court noted that the regulation expressly contains a "good reasons" requirement.[30]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32]  It drew a distinction between a

---

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[36]  Second, the ALJ must identify for the record evidence supporting that finding." [37]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[38]

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Wilson*, 378 F.3d at 546.

[37] *Id.*

[38] *Id.*

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[39]  The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[40]  In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[41] or that objective medical evidence does not support that opinion.[42]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[43]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[44]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[39] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[42] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[43] *Blakley*, 581 F.3d at 407.

[44] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[45]

- the rejection or discounting of the weight of a treating source without assigning weight,[46]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[47]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[48]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[49] and

---

[45] *Blakley*, 581 F.3d at 407-08.

[46] *Id.* at 408.

[47] *Id.*

[48] *Id.* at 409.

[49] *Hensley*, 573 F.3d at 266-67.

-10-

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[50]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[51] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[52]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[53]

In *Cole v. Astrue*,[54] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[55]

---

[50] *Friend*, 375 F. App'x at 551-52.

[51] *Blakley*, 581 F.3d 399.

[52] *Id*. at 409-10.

[53] *Id*. at 410.

[54] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[55] *Id.* at 940.

**B.**     **Applications of standard**

***1.***     ***Substantial evidence supports the ALJ's residual functional capacity finding as to standing and walking.***

At issue here are:  (1) the ALJ's treatment of opinions by treating physicians William Swoger, D.O., and Joseph Bryan, M.D., as to Jones's capacity to stand and walk;[56] and (2) the ALJ's decision not to find that Jones's torn meniscus, osteoarthritis, plantar fasciitis and heel spurs were severe impairments.[57]

*a.*     *The treating physicians*

Jones contends first that the ALJ impermissibly failed to give controlling weight to:

(1)     two opinions (in April and July, 2007) by Jones's primary care physician, Dr.  Bryan, stating that certain impairments[58] variously limited the time Jones could stand or walk;[59] and

(2)     a 2005 report by Dr. Swoger, a sleep disorder specialist, which stated that Jones could continuously stand and walk only for a total of one hour each eight hour day, and then  for merely 20 minutes at a time, due to "SOB [shortness of breath] and [a] chronic cough."[60]

---

[56] *Id*. at 14-20.

[57] *Id*. at 20-23.

[58] "Shortness of breath, asthma and COPD" are the reasons given by Dr. Bryan in the April report.  Dr. Bryan's handwritten note in July is functionally illegible on the point at issue.

[59] ECF # 20 at 17 (citing Tr. at 645, 700).  Dr. Bryan had different time limits in each of his reports.  In April, he states that Jones is limited to 1-2 hours within an 8-hour day. Tr. at 645.  Just three months later in July, he opines she is limited to "3-4 hours and various intervals not continuously."  Tr. at 700.

[60] *Id.* at 19 (citing Tr. at 308).

-12-

In his unusually lengthy decision,[61] the ALJ specifically discussed the above opinions at some length.  I will consider the ALJ's analysis as it applies to each physician individually.

(i)     Dr. Bryan

As to Dr. Bryan, the ALJ began by explicitly designating him a treating source.[62] Then, over nearly a full page, he discussed Dr. Bryan's medical records concerning Jones in some detail.[63]   In that discussion, he specifically noted that in 2002, 2003, and 2006 Dr. Bryan's treatment notes indicated that Jones's asthma was "currently not a problem," "not currently a problem," and that her breathing problems did not cause any work-related limitations.[64]  Thus, the ALJ determined, based on that evidence, that "very little weight" would be given to the two 2007 questionnaires cited above.[65]

Moreover, he further noted that Dr. Bryan's "records do not reveal any reason why" he would have different limitations for Jones in the April 2007 report from that in July.[66]  The ALJ then observes, citing three Sixth Circuit opinions, that "administrative law judges are

---

[61] The opinion is 21 pages with 43 footnotes.

[62] *Id.* at 456 ( referring to Dr. Bryan as Jones's "family physician").

[63] *Id.* at 456-457.

[64] *Id.* at 457.

[65] *Id.*

[66] *Id.*

justified in rejecting the opinion of a treating physician contrary to a previously expressed opinion by the same treating physician."[67]

Here, as to Dr. Bryan, the ALJ properly recognized Dr. Bryan as a treating source, but then articulated a different weight to be given to Dr. Bryan's opinion as to Jones's functionality in this regard.  He articulated clear reasons for assigning such lesser weight, and that such reasons have the support of substantial evidence.

(ii)    Dr. Swoger

Similarly, as to the opinion of Dr. Swoger, the ALJ began his analysis by also identifying him as a treating source.[68]  Again, similar to Dr. Bryan, the ALJ continued his review of Dr. Swoger's opinions by clearly stating that he would afford "little weight" to those opinions as they relate to Jones's RFC.[69]

In that regard, the ALJ noted treating source opinions should receive controlling weight if they are (a) well supported by medically acceptable evidence and (b) not inconsistent with other substantial evidence.[70]  Moreover, that medical evidence must be such as would permit the Commissioner to ascertain the nature and limiting effects of the

---

[67] *Id*. (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461 (6th Cir. 1987)).

[68] *Id*.

[69] *Id*. at 258.

[70] *Id*. (citing 20 C.F.R. § 404.1527(d),(e)).

-14-

impairment, as well as the individual's residual functional capacity to perform work-related activities.[71]

The ALJ then noted that Dr. Swoger grounded his opinions only on Jones's alleged "shortness of breath and chronic cough" – complaints, derived largely from Jones's self-reporting of symptoms and not from any evidence developed by Dr. Swoger, a sleep disorder specialist.[72]  Moreover, the ALJ pointed out that Dr. Swoger's opinion was given in July, 2005, and that he had not seen Jones since May of that year – at which visit Jones told Swoger "that she had not experienced any exertional shortness of breath or asthma symptoms."[73]  In addition to this clear impeachment of the basis of Dr. Swoger's opinion by Jones herself, the ALJ further noted that Dr. Swoger's opinion in this regard was inconsistent with the opinion of the state agency reviewer and the medical expert.[74]

On this record, as stated above, the analysis of the ALJ concerning Dr. Swoger's opinion was extensive, well-documented, and proper.  Thus, the decision to assign that opinion less than controlling weight conformed to the applicable standard and has the support of substantial evidence.

---

[71] *Id*.

[72] *Id.*

[73] *Id*. (citing transcript).

[74] *Id*. (citing transcript).

**2.      *Consideration of other disorders as severe impairments***

Jones here argues that the ALJ erred by not considering her various orthopedic problems reflected in the reports of Jon Oliverio, D.P.M., and Mark Shepard, M.D.[75]  In particular, she contends that her orthopedic problems should have been classified as a severe impairment which, in turn, would have resulted in a more limited RFC finding.[76]  She maintains that the ALJ's failure to find these problems "severe" is not supported by the *de minimis* standard.[77]

First, the ALJ here explicitly and with particularity noted each of the conditions cited by Jones in the beginning of his discussion of severe impairments.[78]  As such, the ALJ recognized on the record the conditions raised here by Jones.

The ALJ then determined in his opinion that these problems/complaints do not rise to the level of being severe impairments because they, either individually or in combination with other impairments, do not have or are not expected to have more than a minimal effect on Jones's ability to perform work-related activities.[79]  The ALJ applied on the record the appropriate *de minimis* standard invoked by Jones in her brief.

---

[75] ECF # 20 at 20-23.

[76] *Id*. at 21.

[77] *Id*.

[78] Tr. at 442-43 n.9 (record for torn meniscus in right knee); n.10 (record for arthritis/ osteoarthritis/rheumatoid arthritis); n.11 (record for plantar fasciitis and heel spurs).

[79] *Id*. at 444.

-16-

Thus, having recognized the conditions Jones now advances, and further stated the applicable basis for adjudication, the question is whether the application of that standard in this case was appropriate.

To that end, the ALJ noted first that Dr. Bryan, Jones's family physician, had opined in a report from 2002 that Jones had no restrictions on her daily activities.[80]  In addition, the ALJ found that Jones's complaints of pain from her medically determinable impairments were not fully credible.[81]  Moreover, as noted earlier, even the RFC findings of Drs. Bryan and Swoger – which were discounted for the reasons given earlier – did not specify any limitations based on the complaints at issue here.

As the Sixth Circuit stated in *Long v. Apfel*,[82] a case construing *Higgs v. Bowen*, on which Jones relies here in discussing the severity requirement, "'The mere diagnosis of [an ailment], of course, says nothing about the severity of the condition.'"[83]  Indeed, after reviewing the post-*Higgs* authority, *Long* affirmed an ALJ's finding of no severe impairment where, like here, the record did not contain any statement by a treating physician linking the specified condition to any specific work-impairing limitation, and the ALJ had discounted

---

[80] *Id.*

[81] *Id.* at 459.

[82] *Long v. Apfel*, 1 F. App'x 326 (6th Cir. 2001).

[83] *Id.*, at  **5 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).

the claimant's complaints regarding pain and physical limitations because he found her not entirely credible.[84]

Accordingly, the ALJ appropriately applied the correct standard to the record here in concluding that these conditions did not constitute a severe impairment.

**2.      The ALJ properly analyzed Jones's sleep apnea, narcolepsy, and obesity at step three of the sequential process and adequately articulated his reasoning in finding they did not meet or equal a listing.**

As noted, the ALJ here included sleep apnea and narcolepsy as severe impairments. He then, however, concluded that Jones's impairments did not meet or equal a listing.[85]  In so finding, he relied on the testimony of Melvin Ross, M.D., the medical expert, and the reports of James McKenna, M.D., the state reviewing physician, and Cynthia Waggoner, Ph.D., the state reviewing psychologist.[86]

Jones here argues that the ALJ erroneously relied on the sources cited above because none of those sources explicitly considered whether Jones met the listing at § 3.10, which deals with sleep related breathing disorders that may be due to a chronic organic mental disorder.  Jones avers that such disorders could be present in her case because of a note from a treating psychiatrist, Stephen Penepacker, M.D., which states that Jones's "irritability" might be better explained by sleep apnea and narcolepsy rather than a bipolar disorder.[87]

---

[84] *Id.*

[85] Tr. at 445.

[86] *Id.* (citing transcript).

[87] ECF # 20 at 24-25 (citing Tr. at 559).

The Commissioner, for his part, notes that the ALJ relied on the medical expert's testimony, which shows that he reviewed the medical record in its entirety, including an extensive review of the evidence concerning Jones's narcolepsy and sleep apnea.[88]  In response to a direct question from the ALJ as to whether Jones meets or equals any listed impairment, the medical expert testified that, although "I thought there were [some] findings under 12.04," nonetheless, "I do not feel she met or equaled the listings."[89]

The Sixth Circuit has stated that such testimony by a medical expert is substantial evidence that a claimant has not met or equaled a listed impairment, and, as such, may be relied upon by an ALJ.[90]

Further, the medical expert here engaged in substantial colloquies as to bi-polar disorder[91] as well as sleep apnea and narcolepsy[92] – discussions that were then followed by even more questioning of the medical expert about narcolepsy from Jones's attorney[93] and testimony on this same issue from Jones herself.[94]  In addition, in this prolonged discussion on the record with the medical expert by both the claimant and her attorney, no mention was

---

[88] ECF # 17 at 6 (citing Tr. at 815-16, 820-26).

[89] Tr. at 817.

[90] *Conn v. Sec'y of Health & Human Servs.*, 7 F.3d 232, 1993 WL 384966, at *1 (6th Cir. Sept. 29, 1993) (table decision) (citation omitted).

[91] Tr. at 817-19.

[92] *Id.* at 819-26.

[93] *Id.* at 826-34.

[94] *Id.* at 834-37.

made, or issue raised, as to the medical expert's just-stated conclusion that Jones did not meet or equal any listed impairment.

Thus,  because there was (a) testimony here from a medical expert that Jones did not meet or equal a listing that was extensively developed on the record, and (b) that conclusion was not questioned by claimant's attorney, substantial evidence supports the analysis and decision by the ALJ in this regard.

This case differs from those recent cases from the Sixth Circuit.  In *Bledsoe v. Barnhart*,[95] and more recently, *Reynolds v. Commissioner of Social Security*,[96] the ALJ made an unaffirmable cursory or summary declarations that a claimant did not meet or equal a listing, and thus acted without evidence to that effect from a medical expert[97] or without an extensive, reviewable discussion on the record.[98]

The above-cited authority clearly states the dangers to meaningful review of a step three decision consists of a mere rote recitation of boilerplate language by an ALJ. Nevertheless, an ALJ is permitted, even encouraged, to rely on a medical expert for a

_____

[95] *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006).

[96] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).

[97] *See, e.g.*, *Keyes v. Astrue*, No. 1:11-CV-00312, 2012 WL 832576 (N.D. Ohio March 12, 2012); *Hakkarainen v. Astrue*, No. 1:10-CV-2463, 2012 WL 398595 (N.D. Ohio Jan. 19, 2012); *Hunter v. Astrue*, No. 1:09-CV-2790, 2011 WL 6440762 (N.D. Ohio Dec. 20, 2011); *Darabed v. Astrue*, No. 1:10-CV-2626, 2011 WL 7456148 (N.D. Ohio Dec. 6, 2011); *May v. Astrue*, No. 4:10-CV-1533, 2011 WL 3490186 (N.D. Ohio June 1, 2011).

[98] *See*, *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056 (N.D. Ohio June 3, 2010); *but see*, *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) (record evidence made ALJ's failure to discuss whether claimant met or equaled a listing harmless error because no additional analysis by the ALJ would have changed the result).

professional medical analysis of whether, on a complicated record, a claimant meets or equals a listing.

Moreover, I am also concerned that an over-broad reading of *Bledsoe* and *Reynolds* would impose affirmative duties on an ALJ to analyze listings not suggested, much less pressed, by the claimant with the burden of proof despite the presence of a medical expert's opinion rendered after review of the entire medical record. This creates the very real risk that the claimant, who has the burden of proof at step three, will be rewarded for deliberately choosing not to raise specific listing arguments at the hearing. Just as the Commissioner is not entitled to take advantage of *post hoc* analysis to put something into an ALJ's opinion that wasn't there originally,[99] so, too, should reviewing courts be concerned that claimants not seek to profit from doing likewise.

## Conclusion

For the foregoing reasons, I find that substantial evidence supports the finding of the Commissioner that Jones had no disability. Accordingly, the decision of the Commissioner denying Jones disability insurance benefits is affirmed.

IT IS SO ORDERED.


Dated:  March 20, 2012                          s/ William H. Baughman, Jr.
                                                United States Magistrate Judge


---

[99] *Hakkarainen*, 2012 WL 398595, at *13 (citations omitted).